IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JENNIFER GARCIA, | § | |
| Plaintiff, | § | SA-18-CV-00978-OLG |
| vs. | § | |
| RANDOLPH-BROOKS FEDERAL CREDIT UNION, | § | |
| Defendant. | § | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable Chief United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant Randolph-Brooks Federal Credit Union's Rule 12(b)(6) Partial Motion to Dismiss Plaintiff's First Amended Complaint [#14]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas [#18]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). In reviewing the motion, the undersigned has also considered Plaintiff's Response [#16] and Defendant's Reply [#17]. For the reasons set forth below, it is recommended that Defendant's Motion [#14] be **GRANTED IN PART AND DENIED IN PART**.

## I. Procedural and Factual Background

Plaintiff Jennifer Garcia originally filed this case in the 408th Judicial District Court for Bexar County, Texas, on August 13, 2018, against her former employer Defendant Randolph Brooks Federal Credit Union (hereinafter "RBFCU"), alleging (1) interference and retaliation

1

claims under the Family and Medical Leave Act, 29 U.S.C. § 2615 ("FMLA"), (2) employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and (3) intentional infliction of emotional distress under Texas law. RBFCU removed Garcia's Petition to federal court on September 19, 2018 on the basis of federal-question and supplemental jurisdiction. (Notice of Removal [#1].)

Following removal, RBFCU promptly moved to dismiss Garcia's claims of FMLA interference and intentional infliction of emotional distress. (Def.'s Mot. to Dismiss [#2].) In response, Garcia moved to amend her Petition, and the Court granted the motion. (Order Granting Leave [#12].) Garcia's First Amended Complaint is the live pleading in this case and reasserts her claims of FMLA interference and retaliation, Title VII sex discrimination, and intentional infliction of emotional distress but also adds a claim of false imprisonment. (First Am. Compl. [#13] at ¶¶ 22–29.)

According to Garcia's First Amended Complaint, she is a homosexual female, who suffered sex discrimination in the workplace due to her romantic relationship with a coworker. (First Am. Compl. [#13] at ¶ 11.) During her full-time employment with RBFCU, Garcia alleges she received verbal and written notice of RBFCU's policy of permitting romantic relationships among its employees, so long as the employees did not report to the same supervisor. (*Id.* at ¶ 11.) Garcia developed a friendship with another female employee, who ultimately requested a change in departments with a different supervisor than Garcia. (*Id.*) After the transfer, Garcia's relationship with the other employee became romantic. (*Id.*) Garcia alleges that as a result of this relationship, she was repeatedly harassed by upper management, specifically her supervisors Michael Guerra and Hector Hurtado, so much so that the harassment exacerbated her anxiety and depression. (*Id.* at ¶ 12.)

Garcia applied for FMLA leave on August 16, 2017 through her primary care physician due to her emotional distress and mental symptoms. (*Id.* at ¶ 13.) Garcia claims that RBFCU made it difficult for her to apply for FMLA leave by twice asking her to "recertify" her request for leave through a third-party claims administrator, "Matrix Absence Management." (*Id.*) During this time period, Garcia alleges she became the subject of "a multitude of trivial complaints" regarding her performance, resulting in a number of written disciplinary reports, which she maintains were groundless. (*Id.* at ¶ 14.) Garcia was ultimately told she was "unreliable" because she was on FMLA leave and was terminated on February 16, 2018. (*Id.* at ¶¶ 15–16.)

On the date of her termination, Garcia claims her two managers (Guerra and Hurtado) had her meet them in a coaching room, where they asked for her badge and terminated her employment in front of three departments and at least 60 employees. (*Id.* at ¶ 16.) According to Garcia, Guerra and Hurtado then had an unarmed head of security and two armed and uniformed security guards escort her to the parking garage. (*Id.*) When Garcia attempted to get into her vehicle, she was blocked from doing so at the direction of the head of security, cornered in the garage, and told to "shut the fuck up." (*Id.*) Garcia ultimately was able to escape and walk home on foot. (*Id.*) After her termination, Garcia claims she discovered that her primary care physician and his staff were interviewed by an employee of Matrix Absence Management and accused of fraud in Garcia's FMLA certification. (*Id.* at ¶ 18.)

Prior to filing this lawsuit, Garcia timely exhausted her administrative remedies. (*Id.* at 21.) RBFCU now moves to dismiss Garcia's claims of FMLA interference, intentional infliction of emotional distress, and false imprisonment. The motion is ripe for this Court's review.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted). However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570.

## III. Analysis

RBFCU contends that Garcia has failed to state a claim as a matter of law for interference under the FMLA, for intentional infliction of emotional distress, and for false imprisonment.

The Court should grant the motion as to the claims for FMLA interference and intentional infliction of emotional distress but deny the motion as to the claim of false imprisonment.

**A.     FMLA Interference**

Garcia's FMLA interference claim should be dismissed.  The FMLA permits an employee to take up to twelve weeks of medical leave for their own serious medical condition or for the care of a family member with a serious medical condition.  29 U.S.C. § 2612(a)(1).  The FMLA also prohibits an employer from interfering with, restraining, or denying the exercise or attempted exercise of an employee's right to take FMLA leave.  *Id.* at § 2615(a)(1).  Additionally, it is unlawful for an employer to discharge or retaliate in any other manner against an individual for opposing the employer's unlawful FMLA practices.  *Id.* at § 2615(a)(2).

Garcia alleges both a claim of FMLA interference and retaliation in her First Amended Complaint.  (First Am. Compl. [#13] at ¶¶ 22–24.)  Garcia's interference claim is based on her allegation that RBFCU required her to apply and resubmit her application for FMLA leave three times in order for her application to be processed.  (*Id.* at ¶ 13.)  Garcia alleges these acts constitute interference with her attempt to obtain FMLA leave.  (*Id.*)

To establish a prima facie case of FMLA interference, Garcia must show that (1) she was an eligible employee, (2) RBFCU was an employer subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of his intention to take FMLA leave, (5) RBFCU interfered with, restrained, or denied her the benefits to which she was entitled under the FMLA, and (6) she suffered prejudice.  *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 209 (5th Cir. 2018); *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).  RBFCU argues that Garcia cannot show that she was denied FMLA benefits to which she was entitled because she alleges RBFCU granted her FMLA

5

application. In response, Plaintiff contends the definition of interference is broader than a mere denial of leave, and, furthermore, she was effectively denied any future unused FMLA leave due to her termination, which constitutes a separate act of interference.

As to the first argument, there is no basis for an interference claim based on the allegation that RBFCU made it more difficult for Garcia to apply for FMLA leave because she was required to recertify her application multiple times before it would be processed. As previously stated, a claim of FMLA interference requires a showing of prejudice. *Ragsdale*, 535 U.S. at 89 (2002); *see also Jones v. Children's Hosp.*, 58 F. Supp. 3d 656, 668–69 (E.D. La. 2014) ("Even if a reasonable jury could find that an employer interfered, restrained, or denied the exercise of FMLA rights, the employee still must point to evidence of prejudice in order to recover."). "Prejudice exists when an employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, such as the cost of providing care, or suffers some loss in employment status such that equitable relief is appropriate." *Jones*, 58 F. Supp. 3d at 669. Garcia's First Amended Complaint does not contain any facts suggesting she suffered any prejudice due to the delay in processing her FMLA application; she in fact received the leave she requested. Accordingly, Garcia cannot state a claim for FMLA retaliation based on the application process to obtain her FMLA leave.

As to the latter argument, the undersigned agrees with RBFCU that Garcia is conflating her claims for interference and retaliation. Although a plaintiff can technically pursue both an interference and a retaliation claim, where the essence of the two claims is identical, the court may dismiss the duplicative claim. *See Kendall v. Walgreen Co.*, No. A-12-CV-847-AWA, 2014 WL 1513960, at *5 (W.D. Tex. Apr. 16, 2014) (dismissing interference claim complaining of retaliatory discharge as opposed to interference with FMLA rights). A court looks to the

substance of plaintiff's claim to determine whether it arises from the deprivation of an FMLA entitlement (interference) or from punishment exacted for the exercise of an FMLA right (retaliation). *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 351 (5th Cir. 2013) (Elrod, J., concurring). Here, the crux of Garcia's complaint is that she was terminated for exercising FMLA leave, not that she was denied the right to medical leave. (*See* First Am. Compl. [#13] at ¶ 15 ("Garcia was ultimately told she was 'unreliable' because she was on FMLA leave and was subsequently terminated."). This is not a case in which the retaliatory termination occurs during FMLA leave, which would give rise, for example, to a separate interference claim based on the loss of a right to reinstatement following the completion of leave. Here, rather, Garcia requested FMLA leave; leave was granted; she took all the leave she had requested; she was reinstated after leave; and she was allegedly terminated for taking leave. This is a claim for FMLA retaliation, not FMLA interference. *See Cuellar*, 731 F.3d at 351; *Shields v. Boys Town La., Inc.*, 194 F. Supp. 3d 512, 527 (E.D. La. 2016) (dismissing FMLA interference claim where plaintiff failed to allege she was denied any FMLA benefits or prevented from using any FMLA benefits, but rather that she was retaliated against for using her benefits).

In summary, Garcia's FMLA interference claim fails as a matter of law because she suffered no prejudice as a result of the only claimed interference by RBFCU in the exercise of her FMLA rights and her interference claim based on her termination is duplicative of her FMLA retaliation claim. *See Kendall*, 2014 WL 1513960, at *5.

**B.     False Imprisonment**

Garcia's false imprisonment claim should not be dismissed at this stage. Garcia asserts a claim of false imprisonment based on her allegations that, on the date of her termination, one unarmed and two armed security guards escorted her to the parking garage, where they prevented

7

her from entering her vehicle, cornered her, and shouted at her using expletives. (First Am. Compl. [#13] at ¶ 16.) Garcia further alleges that she "finally managed to escape the detention and began walking home on foot." (*Id.*) Under Texas law, the essential elements of false imprisonment are: (1) willful detention; (2) without consent; and (3) without authority of law. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). "A detention may be accomplished by violence, by threats, or by any other means that restrains a person from moving from one place to another." *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644–45 (Tex. 1995). "Where it is alleged that a detention is effected by a threat, the plaintiff must demonstrate that the threat was such as would inspire in the threatened person a just fear of injury to her person, reputation, or property." *Id.* at 645. RBFCU contends that Garcia's false imprisonment claim should be dismissed as a matter of law because she fails to allege that she was actually detained, as she ultimately managed to escape and to walk home on foot. The undersigned disagrees.

Garcia's allegations survive dismissal at this early stage in the proceedings. Her allegations do not establish for how long she was detained, but they do allege actual detention, as opposed to merely a threat of detention, and the Court is required to accept such allegations as true. Garcia alleges three men, two of whom were armed, cornered her in a parking garage, prevented her from accessing her vehicle to leave the parking garage, and threatened her with expletives. (First Am. Compl. [#13] at ¶ 16.) "Detention" is commonly defined as either (1) "the act or fact of detaining or holding back; esp: a holding in custody" or (2) "the state of being detained; esp: a period of temporary custody prior to disposition by a court." *In re Hall*, 286 S.W.3d 925, 929 (Tex. 2009) (quoting WEBSTER'S NEW COLLEGIATE DICTIONARY 307 (1981)). "[A] detention can be effected by intentional use of any means to terminate a person's freedom

of movement, including actual physical restraint, or by explicit or implicit threats of force." *De La Fuente v. United States*, No. CIV.A.L-08-87, 2010 WL 2487942, at *5 (S.D. Tex. Mar. 31, 2010), *opinion clarified*, No. CIV.A.L-08-87, 2010 WL 2490428 (S.D. Tex. June 14, 2010). In contrast, an individual is not detained when he or she is free to leave because there is neither physical restraint nor severe enough threats to effectively restrain the individual. *See Safeway Stores, Inc. v. Amburn*, 388 S.W.2d 443, 446 (Tex. Civ. App.—Fort Worth 1965) (reversing judgment against employer on claim of false imprisonment due to lack of any evidence of detention or threat sufficient to result in a detention). Garcia does not allege that she was free to leave; rather, that she managed to escape a detention. The Court should deny RBFCU's motion to dismiss as to her false imprisonment claim.

C. **Intentional Infliction of Emotional Distress**

Garcia's First Amended Complaint alleges a claim of intentional infliction of emotional distress. (First Am. Compl. [#13] at ¶ 27.) This claim should be dismissed. Under Texas law, the elements of such claim are: (1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused the plaintiff emotional distress; and (4) the emotional distress was severe. *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017), *reh'g denied* (Sept. 22, 2017). Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (internal quotations omitted). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* It is for the court to determine, in the first instance, whether a defendant's conduct was extreme and outrageous. *Id.* But when reasonable minds may differ, it is for the jury, subject to

the court's control, to determine whether, in the particular case, the conduct was sufficiently extreme and outrageous to result in liability. *Id.*

The Texas Supreme Court has held that the tort of intentional infliction of emotional distress is a "gap-filler" tort, "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Id.* at 447 (citing *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)). The Supreme Court has cautioned that this tort "should not be extended to circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines." *Standard Fruit and Vegetable Co.*, 985 S.W.2d at 68. This caution is particularly applicable to cases in which a plaintiff combines a statutory sexual harassment claim, as here, with the common law intentional-infliction tort, as by doing so the plaintiff effectively circumvents the legislative determination of the maximum amount a defendant should pay for this type of conduct and any procedural (e.g., an exhaustion requirement) or other limitations (e.g., limiting liability to employers over a certain size) the legislature might impose. *Hoffmann-La Roche Inc.*, 144 S.W.3d at 447–48 (dismissing intentional-infliction claim as preempted by Texas Commission on Human Rights Act ("TCHRA"), which is modeled after Title VII). Where the allegations underlying both the sexual harassment and the intentional-infliction claim are identical, the gap-filler tort should be dismissed. *Id.* at 448 ("If the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes, a statutory claim.")

Accordingly, to sustain her claim for intentional infliction of emotional distress alongside her Title VII sexual harassment claim, Garcia must be able to point to additional egregious

conduct that is independent of the sexual discrimination and harassment giving rise to a statutory claim or other common law claim. *See id.* at 448–49. She has failed to do so. Garcia points to the conduct of the security guards on her date of termination as the additional egregious conduct that is separate and distinct from her sexual harassment claim. (Pl.'s Resp. [#16] at 3.) But Garcia has legal redress for these complaints through her claim of false imprisonment. *See Jones v. Halliburton Co.*, 791 F. Supp. 2d 567, 601 (S.D. Tex. 2011) (dismissing intentional-infliction claim because it was based on conduct addressed through her Title VII and false imprisonment claims). "Under the precedent of the Texas Supreme Court, [this court] must focus on the availability—not the ultimate success—of statutory or common law remedies for the wrongful acts" in evaluating whether or not to dismiss the gap-filler tort of intentional infliction of emotional distress. *Id.*

Finally, Garcia further argues that her intentional-infliction claim should be permitted because it is possible that mental-anguish damages are not available under the FMLA, and she should be permitted to rely on the Texas tort to obtain this remedy. (*Id.* at 4.) The statutory limitations on damages—and the ability to circumvent them through pursuing a claim of intentional infliction of emotional distress—is precisely the reason the Texas Supreme Court limited the use of the tort as a gap filler. *See Standard Fruit and Vegetable Co.*, 985 S.W.2d at 68. This is not the kind of independent conduct necessary to articulate a separate claim of intentional infliction of emotional distress above and apart from other statutory and common law remedies. The Court should grant RBFCU's motion to dismiss as to this claim.

## IV. Conclusion and Recommendation

In summary, having considered Garcia's First Amended Complaint in light of the arguments raised in RBFCU's motion to dismiss, the response and reply thereto, and the

governing law, the undersigned recommends that Defendant Randolph-Brooks Federal Credit Union's Rule 12(b)(6) Partial Motion to Dismiss Plaintiff's First Amended Complaint [#14] be **GRANTED IN PART AND DENIED IN PART.** The Court should grant RBFCU's motion as to Garcia's claims of FMLA interference and intentional infliction of emotional distress and dismiss these claims. The Court should deny RBFCU's motion as to Garcia's claim of false imprisonment.

## V. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 16th day of April, 2019.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE