IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JENNIFER GARCIA, | § | |
| *Plaintiff,* | § | SA-18-CV-00978-OLG |
| vs. | § | |
| RANDOLPH-BROOKS FEDERAL CREDIT UNION, | § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Chief United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant Randolph-Brooks Federal Credit Union's Motion for Summary Judgment [#26]. All dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#18]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's motion be **GRANTED IN PART AND DENIED IN PART**.

## I. Background

Plaintiff Jennifer Garcia originally filed this case in the 408th Judicial District Court for Bexar County, Texas, on August 13, 2018, against her former employer Defendant Randolph Brooks Federal Credit Union (hereinafter "RBFCU"), alleging (1) interference and retaliation claims under the Family and Medical Leave Act, 29 U.S.C. § 2615 ("FMLA"), (2) employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and (3) intentional infliction of emotional distress under Texas law. RBFCU

1

removed Garcia's Petition to federal court on September 19, 2018 on the basis of federal-question and supplemental jurisdiction. (Notice of Removal [#1].)

Following removal, RBFCU moved to dismiss Garcia's claims of FMLA interference and intentional infliction of emotional distress. (Def.'s Mot. to Dismiss [#2].) In response, Garcia moved to amend her Petition, and the Court granted the motion. (Order Granting Leave [#12].) Garcia's First Amended Complaint is the live pleading in this case and reasserts her claims of FMLA interference and retaliation, Title VII sex discrimination, and intentional infliction of emotional distress but also adds a claim of false imprisonment. (First Am. Compl. [#13] at ¶¶ 22–29.)

According to Garcia's First Amended Complaint, she is a homosexual female, who suffered sex discrimination in the workplace due to her romantic relationship with a coworker. (First Am. Compl. [#13] at ¶ 11.) Garcia alleges that as a result of this relationship, she was repeatedly harassed by upper management, specifically her supervisors Michael Guerra and Hector Hurtado, so much so that the harassment exacerbated her anxiety and depression. (*Id.* at ¶ 12.) Garcia further claims that RBFCU made it difficult for her to apply for FMLA leave related to these conditions, and she was terminated in retaliation for her use of the leave. (*Id.* at ¶¶ 13–16.) Garcia's false imprisonment claim concerns the events surrounding her termination; she alleges that armed security guards blocked her from entering her vehicle but that she was able to escape and walk home on foot. (*Id.* at ¶ 16.)

RBFCU filed a second motion to dismiss, this time seeking dismissal of Garcia's claims of FMLA interference, intentional infliction of emotional distress, and false imprisonment. The undersigned issued a report and recommendation to the District Court on the motion to dismiss, recommending that the motion be granted in part as to Garcia's claim of FMLA interference and

intentional infliction of emotional distress but denied as to the claim of false imprisonment. (Report [#21].) The District Court adopted the report in full, leaving Plaintiff's claims of FMLA retaliation, Title VII sex discrimination, and false imprisonment pending. (Order [#23].) RBFCU now moves for summary judgment on all three of these claims.

## II. Summary Judgment Record

The summary-judgment record in this case establishes the following disputed and undisputed facts pertaining to Garcia's claims. Garcia, who identifies as a lesbian, began her employment at RBFCU on May 31, 2016 as a consumer lending representative in RBFCU's call center. (Garcia Dep. [#26-1] at 47:1, 23:8–10, 32:18–19, 34:4–6.) RBFCU is a San Antonio based, not-for-profit federal credit union that operates in Austin, Corpus Christi, Dallas, and San Antonio. (Ingle Aff. [#26-2] at ¶ 3.) Garcia subsequently became a consumer lending title support specialist, where she first reported to Denise Rivera, who is now her wife. (Garcia Dep. [#26-1] at 43:21–44:23.) During her employment, she received two merit raises—once while working as a consumer lending representative and once while working as a consumer lending title support specialist. (Garcia Dep. [#26-1] at 39:13–24, 42:9–10.)

Garcia claims that throughout her employment she suffered discrimination due to her sexual orientation. Garcia testified in her deposition that she was the repeated victim of jokes about sexual intercourse, her hair and dress, and her female friendships; that her supervisors refused to issue her a men's company shirt when requested; and that her coworkers publicly humiliated her by issuing her an extra, extra-large women's shirt instead. (Garcia Dep. [#26-1] at 35:7–24, 37:2–11, 80:8–25.) Garcia's deposition testimony states that she complained to her supervisors about the harassment, but it continued. (Garcia Dep. [#26-1] at 35:22–25.) Garcia

3

further testified that at first she did not complain to Human Resources, but ultimately she did so, still to no avail. (Garcia Dep. [#26-1] at 36:23-37:1, 82:15–25.)

It is undisputed that Garcia has a history of bipolar disorder and anxiety and is under treatment for these conditions. (Med. Records [#29-1].) Garcia applied for intermittent FMLA leave on August 1, 2017 due to these medical issues. (Garcia Dep. [#26-1] at 70:3–25, 170:9–25; Leave Form [#26-6] at 7–8.) In support of her FMLA application, Garcia's physician certified that she suffers from anxiety and panic attacks, that drugs alleviate the symptoms, but she does sometimes need to miss work due to side effects from medications. (Certification [#29-1] at 80–83.) Records of Garcia's leave history indicate that she took intermittent FMLA leave beginning August 2, 2017 continuing through February 2018, when her employment was terminated. (Absence Records [#26-7] at 4–6.)

The record reflects that Garcia's employment was terminated on February 16, 2018 for the stated reason of "dishonesty." (Garcia Dep. [#26-1] at 30:9–14.; Termination Ltr. [#26-9] at 4.) RBFCU maintains Garcia was terminated for dishonesty related to her request for FMLA leave for January 18–19, 2018. (Ingle Aff. [#26-2] at ¶ 5.) The testimony of various witnesses related to Garcia's use of FMLA leave for the dates of January 18–19, 2018 varies slightly.

Garcia stated in her deposition that in January 2018, she needed to have a one-day surgical procedure at the dermatologist for a skin condition unrelated to her intermittent FMLA leave. (Garcia Dep. [#29-2] at 187:6–14.) Garcia maintains that she originally applied to use paid time off ("PTO") for the surgery, but the request was denied because she did not have any PTO available. (Garcia Dep. [#29-2] at 187:15–24; Daffin Aff. [#26-11] at ¶¶ 2–3; Hurtado Dep. [#26-12] at 89:5–25.) Garcia's supervisors, Hector Hurtado and Michael Guerra, both testified in their depositions that Garcia's original PTO request was not for surgery but for a

4

cruise vacation she had planned for that time period. (Hurtado Dep. [#26-12] at 89:5–25; Guerra Dep. [#26-13] at 7:6–24.) The testimony is consistent, however, that regardless of the basis for the PTO request, the request was denied due to insufficient remaining PTO. (Hurtado Dep. [#26-12] at 89:5–25; Guerra Dep. [#26-13] at 7:6–24.) Hurtado further testified that it was only after the denial of the PTO request that Garcia indicated she needed surgery for a non-related FMLA claim. (Hurtado Dep. [#26-12] at 89:5–25.)

It is undisputed that Garcia did not receive the dermatological surgery on January 18 or 19, 2018, and the surgery was ultimately rescheduled for February 8, 2019. (Garcia Dep. [#29-2] at 194:14–18.) It is also undisputed that Garcia ultimately requested FMLA leave under her existing intermittent leave for January 18 and 19, 2018, and that she used this FMLA leave to go on a cruise to Cozumel, Mexico with Rivera and others. (Absence Records [#26-7] at 4–6; Daffin Aff. [#26-11] at ¶¶ 2–3; Garcia Dep. [#26-1] at 204:11–18.)

Garcia stated in her deposition that the cruise was recommended by her physician as treatment for her severe depression and anxiety. (Garcia Dep. [#29-2] at 204:15–22.) Garcia concedes she never informed Human Resources or any of her supervisors about the cruise. (Garcia Dep. [#26-1] at 205:6–25.) After Garcia returned to work, however, two of her coworkers submitted statements to Human Resources reporting that Garcia had taken a cruise on January 18 and 19, 2018. (Daffin Aff. [#26-11] at 2; Chavez Statement [#26-8] at 2; Paniagua Statement [#26-8] at 3.)

Barbara Daffin, Human Resources Supervisor for Benefits and Employee Relations, thereafter called Guerra and directed him to terminate Garcia's employment. (Guerra Dep. [#26-13] at 61:19–25.) On the date of Garcia's termination, it is undisputed that Garcia was escorted by armed security guards down the stairwell and off of RBFCU's property. (Garcia Dep. [#26-1]

at 252:1–25, 255:1–25; Vives Statement [#26-10] at 2; Juarez Statement [#26-10] at 3; Brooks Statement [#26-10] at 4.) Garcia, however, also testified in her deposition that one of the security officers swore at her, that the officer and others swarmed around her vehicle, which prevented her from getting into her car and from driving out of the parking garage, and that she was forced to walk away on foot. (Garcia Dep. [#26-1] at 254:18–256:23.)

On May 29, 2018, Garcia filed a Charge of Discrimination with the Texas Workforce Commission on Human Rights ("TWCHR") and the Equal Employment Opportunity Commission ("EEOC") for sex discrimination. (EEOC Charge [#26-5] at 4.) The Charge alleges that Garcia was subjected to "continuous harassment by Michael Guerra and Hector Hurtado because [she] was openly homosexual" and states that she believes she was in fact terminated because of her sexuality and her use of intermittent FMLA leave. (EEOC Charge [#26-5] at 4 ("I believe I was discriminated against because of my sex/female, for not conforming to the stereotypes about how women are expected to present themselves in my physical appearance, actions, and/or behaviors.") Garcia timely filed this lawsuit on August 13, 2018. (Orig. Pet. [#1-1] at 4.)

### III. Legal Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. However, if the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the non-movant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### IV. Analysis

RBFCU moves for summary judgment on each of Garcia's remaining claims—FMLA retaliation, Title VII discrimination, and false imprisonment. The Court should deny summary judgment as to Garcia's claim of FMLA retaliation, grant summary judgment as to Garcia's

claim of Title VII sex discrimination but allow her claim of Title VII harassment to proceed to trial, and grant summary judgment as to her claim of false imprisonment.

**A.    FMLA Retaliation**

The FMLA entitles employees to take reasonable leave for medical reasons and prohibits employers from discharging or discriminating against an employee for opposing any practice made unlawful by the act.  29 U.S.C. §§ 2601(b)(2), 2615(a)(2).  "The Department of Labor has interpreted this statutory provision to forbid employers from terminating employees for having exercised or attempted to exercise FMLA rights."  *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013) (citing 29 C.F.R. § 825.220(c)).  Garcia claims she was harassed and terminated due to her exercise of her right to FMLA leave.  (First Am. Compl. [#13] at ¶ 24.)

To establish a *prima facie* case of FMLA retaliation, Plaintiff must show: (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3)(a) she was treated less favorably than a similarly situated employee who had not requested leave or (b) the adverse decision was made because she took FMLA leave.  *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017).  "The third element requires the employee to show 'there is a causal link' between the FMLA-protected activity and the adverse action."  *Id.* (citing *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005)).

Where there is no direct evidence of retaliation, as here, the *McDonnell Douglas* burden-shifting framework typically governs.  *See Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (applying *McDonnell Douglas* to FMLA retaliation claim).  Under *McDonnell Douglas*, "[o]nce an employee propounds a *prima facie* case of interference or retaliation, 'the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.'"  *Tatum v. S. Co. Servs., Inc.*, 930 F.3d 709, 713 (5th Cir.

2019) (quoting *Richardson*, 434 F.3d at 332). Thereafter, "the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination." *Richardson*, 434 F.3d at 332–33.

But where an employee argues that FMLA protected activity was not the sole reason for her discharge but only a motivating factor in the termination, under Fifth Circuit precedent the *McDonnell Douglas* framework does not apply and instead a mixed-motive framework governs. *Id*. at 333. Although recent Supreme Court decisions construing the ADEA and Title VII suggest the *Richardson* panel's construction of the FMLA's text may be incorrect on this point, the Fifth Circuit has thus far declined to reach the issue. *Trautman v. Time Warner Cable Texas, L.L.C.*, 756 Fed. App'x 421, 428 n.5 (5th Cir. 2018) (noting that whether the mixed-motive method to establish FMLA-retaliation claims survives the Supreme Court's decisions in *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013), and *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009) remains an open question in the Fifth Circuit); *see also Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389–90 (5th Cir. 2013) (explaining same). The mixed-motive framework allows an employee to carry its burden under the third step by "creat[ing] a genuine issue of fact either that (a) the employer's proffered reason is a pretext for discrimination, or—and herein lies the modifying distinction—(b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination." *Richardson*, 434 F.3d at 333. Although Garcia does not plead the mixed-motive framework in her Amended Complaint, she does argue in her summary judgment response that she has at least presented circumstantial evidence that FMLA retaliation was a motivating factor in the termination decision. (Response [#29] at 8–9.)

RBFCU contends it is entitled to summary judgment on Garcia's claim of FMLA retaliation because Garcia cannot make out a *prima facie* case of retaliation and she cannot rebut its legitimate, non-discriminatory reason for her termination—her dishonesty regarding the reason for her leave taken on January 18 and 19, 2018. The Court agrees with RBFCU that even if Garcia could make out a *prima facie* case of FMLA retaliation, she has failed to rebut the evidence of a legitimate, non-discriminatory reason for her termination under the traditional *McDonnell Douglas* framework. But RBFCU does not address Garcia's motivating factor argument anywhere in its summary judgment briefing. Under a mixed-motive framework, after an employer presents evidence of a legitimate, non-discriminatory reason, then the plaintiff only must point to some evidence from which the factfinder may infer that the protected activity played some part in the termination decision. *Richardson*, 434 F.3d at 333. At that point, the burden shifts back to the employer to present evidence that it would have terminated the employee, regardless of the protected activity. *See id.* Here, Garcia has met her summary judgment burden, but RBFCU has not.

RBFCU maintains it terminated Garcia's employment due to her "dishonesty" regarding the reason she took FMLA leave on January 18 and 19, 2018. (Termination Ltr. [#26-9] at 4.) It goes without saying that lying is a legitimate, nondiscriminatory reason to terminate or discipline an employee. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001); *Pittman v. General Nutrition Corp.*, 515 F. Supp. 2d 721, 738 (S.D. Tex. 2007); *Grant v. CPC Logistics, Inc.*, No. 3:12-CV-00200-L, 2013 WL 6164278, at *8 (N.D. Tex. Nov. 20, 2013). Moreover, RBFCU has a stated policy prohibiting "theft, fraud, or other acts of dishonesty," which are cause for immediate termination. (RBFCU Employee Handbook [#26-3] at 15–16.) Garcia argues that RBFCU's stated reason for her termination was pretext for FMLA retaliation because

she was not in fact dishonest in that she believed the cruise was covered under her existing approved FMLA leave. This argument misunderstands the inquiry before the Court regarding pretext under *McDonnell Douglas*.

The analysis as to whether an employer's stated reason for a termination is pretext for discrimination or retaliation "does not turn on whether the employee in fact violated the policy, but rather whether the employer reasonably believed the employee violated the policy and acted based on that belief." *Chamblee v. Miss. Farm Bureau Federation*, 551 Fed. App'x. 757, 760 (5th Cir. 2014) (citing *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir.1993)). "Thus, as a general rule, an employee's denial of wrongdoing does not create pretext because it does not impact whether the employer reasonably believed the wrongdoing occurred." *Harkness v. Bauhaus U.S.A., Inc.*, 86 F. Supp. 3d 544, 562 (N.D. Miss. 2015) (citing *Strahan v. Waste Mgmt.*, 539 Fed. App'x. 331, 332 (5th Cir. 2013)).

Rather, "[p]retext is established either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (internal quotations omitted). The evidence, even when viewed in Garcia's favor, does not demonstrate pretext. Garcia's deposition testimony states that she requested PTO for a one-day dermatological surgical procedure that was to occur on January 18, 2018, and that she intended to take off the following day for recovery. (Garcia Dep. [#26-1] at 195:12–197:25.) Garcia acknowledged that this procedure was unrelated to her approved intermittent FMLA leave for depression and anxiety. (Garcia Dep. [#26-1] at 187:9–14, 231:1–4.) It is undisputed that Garcia's PTO request was denied due to insufficient leave balance. (Garcia Dep. [#26-1] at 195:2–25.) Garcia testified that, after the PTO request was denied, she ultimately rescheduled the dermatology procedure for

February 8, 2018 but did not need to take a second day off because it was a simple one-hour procedure. (Garcia Dep. [#26-1] at 197:14–198:5.)

Garcia nonetheless took off January 18 and 19, 2018, using her approved intermittent FMLA leave to do so. (Absence Records [#26-7] at 4–6.) It is undisputed that Garcia was on a cruise in Cozumel, Mexico with friends on these two days, and she did not inform Human Resources of the trip. (Daffin Aff. [#26-11] at ¶¶ 2–3; Garcia Dep. [#26-1] at 204:11–18, 205:6–25.) Garcia also testified that she had been on multiple cruises within the year prior to the January 2018 cruise to Mexico. (Garcia Dep. [#29-2] at 198:17–203:8.) Garcia maintains that there was no dishonesty in her using her FMLA leave to take a cruise to Cozumel, Mexico because her doctor recommended the cruise as treatment for her depression, and therefore the trip was covered under her existing FMLA leave. (Garcia Dep. [#29-2] at 204:11–22.) Yet the record contains two statements by Garcia's coworkers that were submitted to Human Resources, which collectively state that Garcia told her colleagues she won a cruise, that she took the cruise for her birthday, and that she directed her colleagues not to say anything about the cruise "because she was going to use FMLA to go on the trip" because the time off had not been approved. (Chavez Statement [#26-8] at 2; Paniagua Statement [#26-8] at 3.)

Again, in determining pretext, the Court need not determine whether Garcia's coworkers were being truthful in their statements or whether Garcia ultimately acted dishonestly in using FMLA leave to take the cruise. The Court is merely charged with determining whether there is sufficient evidence to raise a genuine issue of material fact on the question as to whether Garcia was subjected to disparate treatment in her termination and whether RBFCU's stated reason for Garcia's termination was "false or unworthy of credence." *See Delaval*, 824 F.3d at 480 (internal quotation omitted).

As to disparate treatment, Garcia argues that the evidence shows she was treated less favorably than other employees, yet the only comparators she identifies were not similarly situated. Garcia identifies two comparators in her affidavit—Monica Butcher and Victoria Chavez. (Garcia Aff. [#29-3] at ¶¶ 2–3.) Although Garcia states that these individuals held her same position and worked in the same department, she also states that they did not take FMLA leave. (Garcia Aff. [#29-3] at ¶ 4.) There is also no similar evidence that RBFCU was informed that these individuals violated a company policy and were nonetheless not terminated. No reasonable factfinder could conclude that Garcia was subjected to disparate treatment with respect to her termination based on the record before the Court.

Nor is there sufficient evidence from which a factfinder could infer that RBFCU's stated reason for her termination was false or unworthy of credence. The summary judgment record establishes that Human Resources received the two witness statements from Garcia's coworkers that Garcia was hiding the real reason for her FMLA leave—a birthday cruise trip—from her supervisors, and Garcia admitted in her deposition that she did not herself ever inform RBFCU that she would be using her FMLA leave for a cruise. (Daffin Aff. [#26-11] at ¶ 3; Garcia Dep. [#292-2] at 205:6–10.) Garcia attempts to challenge these witness statements and Daffin's affidavit regarding the statements as inadmissible hearsay (*see* Resp. [#29] at 2), but the Court is not considering the statements for the truth of the matters asserted therein—only that it is undisputed that Human Resources received them. *See* Fed. R. Evid. 801(c) (defining "hearsay" as a statement offered "to prove the truth of the matter asserted in the statement"). Accordingly, Garcia's objections as to this evidence are overruled.[1]

---

[1] The Court also overrules all other objections raised by Garcia to the summary judgment evidence.

Because Garcia has not proffered any evidence from which a factfinder could infer pretext, were the traditional *McDonnell Douglas* framework the only inquiry before the Court, RBFCU would likely be entitled to summary judgment on Garcia's FMLA retaliation claim. However, as previously noted, Garcia argues that there is evidence that her use of FMLA leave was at least a motivating factor in the termination decision—even if RBFCU's stated reason for her termination was another.

Garcia's deposition testimony states that she was subjected to at least weekly coaching sessions (with a maximum of sometimes four per week) with her supervisor, Hurtado, leading up to her termination, during which she was told she was unreliable due to her frequent use of FMLA leave. (Garcia Dep. [#29-2] at 120:1–15, 135:12–15; 136:2–137:14.) Garcia testified that due to this perceived unreliability, she was not considered for promotions, was kept in entry level duties, was not permitted to work overtime, was not given teambuilding opportunities available to other employees, and was required to work the late shift.[2] (Garcia Dep. [#29-2] at 137:8–144:2.) Accepting this testimony as true, a reasonable factfinder could conclude that Garcia's frequent use of FMLA leave was at least one factor that motivated RBFCU's decision to terminate her employment. *See Richardson*, 434 F.3d at 333. Again, RBFCU does not

---

[2] In her summary judgment response, Garcia seems to be arguing that the retaliation she suffered was not just her termination but also these employment decisions. (Resp. [#29] at 5–6.) Although the theory of her case is unclear, the undersigned notes that "[m]aterially adverse actions are not limited to ultimate employment decisions but include any actions that would dissuade a reasonable employee from exercising his [or her] rights under the FMLA." *Lushute v. Louisiana, Dep't of Soc. Servs.*, 479 Fed. App'x 553, 555 (5th Cir. 2012) (citing *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006)). "In other words, an employee suffers an adverse employment action if a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (citations omitted). It is possible that some of these adverse actions might satisfy the *Burlington Northern* standard as actions that would dissuade a reasonable worker from taking FMLA leave. These fact questions may be further developed at trial.

address Garcia's motivating factor argument under *Richardson* and therefore has not attempted to carry its ultimate burden to present evidence that it would have terminated Garcia for dishonesty, regardless of her frequent use of FMLA leave. *See id.* Accordingly, RBFCU is not entitled to summary judgment on Garcia's claim of FMLA retaliation under a mixed-motive framework, and this claim should proceed to trial.

**B.        Title VII Sex Discrimination and Harassment**

Garcia also alleges she was the victim of sexual discrimination under Title VII of the Civil Rights Act of 1964. (First Am. Compl. [#13] at ¶ 25.) Garcia's First Amended Complaint alleges that as a homosexual female she was "repeatedly and continuously questioned and badgered" about her sexual orientation by her supervisors and her colleagues, that this harassment was extreme, and that it exacerbated her anxiety and depression. (First Am. Compl. [#13] at ¶ 12.) It is unclear from Garcia's pleading whether she is alleging Title VII discrimination, Title VII harassment, or both. RBFCU treats Garcia's claim as solely one for sex discrimination. (Summ. J. Mot. [#26] at 14–16.) In her response, however, Garcia appears to construe her claim as complaining of harassment. (Resp. [#29] at 9–10.) The undersigned therefore considers both claims in this report and recommendation.

Title VII prohibits employment discrimination against "any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A prima facie case of discrimination requires four elements: (1) that the individual is a member of a protected class; (2) that the individual was qualified for the position; (3) that the individual suffered an adverse employment action; and (4) that the individual was replaced by or treated less favorably than someone outside the protected class.

*Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996). As with Garcia's FMLA retaliation claim, if she establishes a *prima facie* case of sex discrimination, the burden shifts to RBFCU to show it had a legitimate, nondiscriminatory reason for the adverse employment action. *See McDonnell Douglas*, 411 U.S. at 802. If RBFCU can show a legitimate, non-discriminatory reason for the action, the presumption of discrimination disappears, and the burden shifts back to Garcia to show that the proffered reason was a pretext for discrimination. *See Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 332 (5th Cir. 2019);

To the extent Garcia is claiming she was terminated or otherwise discriminated against due to her sexual orientation as a lesbian, this claim is foreclosed under existing Fifth Circuit law. Although some circuits disagree, the Fifth Circuit has repeatedly held that "Title VII does not prohibit discrimination on the basis of sexual orientation" because sexual orientation is not a protected class under Title VII. *Wittmer*, 915 F.3d at 330; *see also Blum v. Gulf Oil Corp.*, 597 F.2d 936, 938 (5th Cir. 1979) ("Discharge for homosexuality is not prohibited by Title VII . . . ."). Therefore, the only way Garcia could prevail on this claim is if she raises a genuine issue of material fact that she suffered discrimination because of her "failure to conform to traditional gender stereotypes." *See E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 454 (5th Cir. 2013) (en banc). Garcia may advance such an allegation, but this claim still fails to survive RBFCU's motion for summary judgment because she cannot establish a *prima facie* case of sex discrimination.

For a sex discrimination claim under Title VII, "adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (internal

quotations omitted). Regarding Garcia's termination, there is simply no evidence in the record that this employment action was "because of" Garcia's failure to conform to traditional gender stereotypes. *See* 42 U.S.C. § 2000e–2(a)(1). Garcia does not identify any other adverse employment action with respect to this claim in her response. Rather, as previously noted, she argues this claim as Title VII harassment, rather than discrimination.

"The creation of a hostile work environment through harassment . . . is a form of proscribed discrimination." *Boh Bros. Const. Co.*, 731 F.3d at 452 (quoting *Vance v. Ball State Univ.*, -- U.S. --, 133 S. Ct. 2434, 2455 (2013) (Thomas, J., concurring)). Garcia maintains she was the victim of workplace harassment in that she was forced to wear women's clothing, told to wear makeup and her hair down, and subjected to conversations about heterosexual sexual intercourse. (Response [#29] at 9; Garcia Dep. [#26-1] at 35:7–24, 37:2–11, 80:8–25, 81:10–20.) Garcia testified in her deposition that she complained to her supervisor and Human Resources about the harassment, but it never stopped. (Garcia Dep. [#26-1] at 82:15–25.)

There are four elements of a hostile working environment or harassment claim under Title VII: (1) the employee belongs to a protected class; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). Harassment "because of sex" is actionable whether committed by members of the same or opposite sex of the plaintiff. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–82 (2004). And sex discrimination includes discrimination due to failure to conform to gender stereotypes. *See Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). Despite Garcia's characterization of her Title VII claim as a

harassment claim in her summary judgment response, RBFCU advances no arguments regarding its entitlement to summary judgment on this claim. Accordingly, RBFCU has not carried its initial burden on its motion as to this claim. *See Catrett*, 477 U.S. at 323. The Court should therefore grant summary judgment to RBFCU on Garcia's Title VII claim insofar as she is alleging Title VII sex discrimination but allow Garcia's Title VII harassment claim to proceed to trial. In making this recommendation, the undersigned expresses no opinion as to whether there is in fact evidence to support all essential elements of this claim, only that RBFCU failed to carry its summary judgment burden.

**C. False Imprisonment**

Garcia also alleges RBFCU is liable for false imprisonment under Texas law. (First Am. Compl. [#13] at ¶ 29.) Under Texas law, the essential elements of false imprisonment are: (1) willful detention; (2) without consent; and (3) without authority of law. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). "A detention may be accomplished by violence, by threats, or by any other means that restrains a person from moving from one place to another." *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644–45 (Tex. 1995). "Where it is alleged that a detention is effected by a threat, the plaintiff must demonstrate that the threat was such as would inspire in the threatened person a just fear of injury to her person, reputation, or property." *Id.* at 645.

RBFCU is entitled to summary judgment on this claim. The record does not contain any evidence that RBFCU employees detained Garcia by restraining her from moving from one place to another. Even crediting all of Garcia's testimony, the record merely establishes that Garcia was escorted to the exit of the parking garage by armed security guards who were threatening her and intimidating her as they did so. (Garcia Dep. [#26-1] at 252:1–25, 255:1–25.) Garcia

18

testified in her deposition that these guards physically blocked her from getting into her vehicle but not from leaving the garage. (Garcia Dep. [#26-1] at 265:2–25.) Being prevented from getting into your vehicle is not false imprisonment.

## V.  Conclusion and Recommendation

Having considered RBFCU's motion, the response and reply thereto, the summary judgment record, and governing law, the undersigned recommends that Defendant Randolph-Brooks Federal Credit Union's Motion for Summary Judgment [#26] be **GRANTED IN PART AND DENIED IN PART** as follows:

- The Court should grant summary judgment to RBFCU on Garcia's claims of Title VII sex discrimination and false imprisonment.

- The Court should allow Garcia's claims of FMLA retaliation and Title VII harassment to proceed to trial.

## VI .  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the clerk of the court, and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the

party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 22nd day of January, 2020.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE